*In re* MARCUS W., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Marcus W., Respondent-Appellant).

Fourth District  No. 4—08—0031

Opinion filed May 15, 2009.

Michael J. Pelletier, Gary R. Peterson, and Jacqueline L. Bullard, all of State Appellate Defender's Office, of Springfield, for appellant.

Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, Robert J. Biderman, and Aimee Sipes Johnson, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE POPE delivered the opinion of the court:

In September 2005, respondent minor Marcus W. (born January 25, 1989) was adjudicated delinquent in Kankakee County. The trial

court sentenced respondent minor to a term of probation to end on his twenty-first birthday. In August 2007, the State filed a petition to revoke respondent minor's probation in Champaign County. In October 2007, the court revoked respondent minor's probation. That same month, the court resentenced respondent minor to an indeterminate term of imprisonment in the Department of Juvenile Justice (DJJ) not to exceed seven years or his twenty-first birthday, whichever came first. Respondent minor appeals, arguing the State's failure to (1) name respondent minor's guardian in its petition to revoke respondent minor's probation and (2) serve proper notice of the revocation proceedings on a single adult corespondent violated his due-process rights, warranting plain-error review. We vacate respondent minor's "admission" and reverse and remand.

## I. BACKGROUND

In June 2005, the State's Attorney's office in Kankakee County filed a petition for adjudication of wardship against respondent minor, who was then 15 years old, alleging he committed aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(2)(i) (West 2004)). The petition named respondent minor's mother (Anna B.), father (Terrance W.), and guardian (Anna W.).

In June 2005, respondent minor and Anna W. appeared in court. Later that month, respondent minor's mother was served with a summons at 653 West Bridge, Kankakee, Illinois. Service was attempted on respondent minor's father at 385 North Harrison Avenue, Kankakee, Illinois. However, he was not served as this was the address for an eight-unit apartment building and no unit number was specified on the summons. The trial court granted the State leave to provide notice by publication to respondent minor's father. Respondent minor's mother appeared at a detention hearing on June 20, 2005. Anna W. and respondent minor's father appeared at a pretrial hearing on July 6, 2005.

In September 2005, respondent minor entered an admission to the petition in his father's presence, and the trial court adjudicated him delinquent. A psychosocial assessment prepared in conjunction with respondent minor's sentencing stated respondent minor had monthly contact with his father and daily contact with his mother prior to his arrest. According to the psychosocial assessment, respondent minor reported living with Anna W. since he was one year old.

Later that month, the trial court placed respondent minor on probation until January 25, 2010, his twenty-first birthday. The court appointed the supervisor of probation for Kankakee County as the minor's guardian and custodian. The court ordered respondent minor

to reside and complete sex-offender treatment at Onarga Academy (Onarga). While at Onarga, Anna W. visited respondent minor several times and participated in his therapy. However, respondent minor's parents did not visit him while he was at Onarga.

On August 14, 2007, after his release from Onarga, respondent minor's probation was judicially transferred to Champaign County. Respondent minor was attending classes at Parkland Community College and working part-time in Champaign-Urbana. On August 29, 2007, just over two weeks later, the Champaign County State's Attorney's office filed a petition for the revocation of respondent minor's probation because he failed to report an address change. Respondent minor was 18 years old when the State filed the petition, which named respondent minor, his father, and his mother. According to the petition, respondent minor's father's and mother's respective addresses were unknown. The State did not name Anna W. in the petition.

On August 29, 2007, two weeks after respondent minor's probation was judicially transferred to Champaign County, the trial court held a detention hearing pursuant to the State's petition to revoke respondent minor's probation. Neither Anna W., respondent minor's father, nor respondent minor's mother was present. The record contains no indication respondent minor's father and respondent minor's mother were given any kind of notice of this proceeding by the State, the trial court, the public defender, or probation services.

A probation services report indicates Anna W. was notified by telephone on August 28, 2007, at approximately 6:10 p.m. that respondent minor had been taken into custody and a detention hearing was scheduled for the next day. However, she was unable to attend because she had recently been discharged from the hospital.

At that hearing, even though the record does not reflect the State or the public defender attempted to give any kind of notice to either of respondent minor's parents, the State declared:

> "[THE STATE]: Judge, apparently the respondent minor was released from the Onarga Academy without any adult supervision, to an address here in Champaign County, that's my understanding.
> ***
> Judge, in light of the fact that the respondent minor has no adult supervision here, and the information contained in the petition to revoke, the State does feel at this time that it is a matter of immediate and urgent necessity that he be further detained."

The trial court then asked the public defender, who had just been assigned by the court, to comment. The public defender stated:

> "Your Honor, the respondent minor has been residing in Urbana. Since the respondent minor does not have a legal guardian here in Champaign at this time, we have no requests."

The court ordered respondent minor detained pending further proceedings. The court did not inquire of respondent minor, the State, the public defender, or probation services as to the whereabouts of respondent minor's parents or Anna W. In addition, from the record, it does not appear the court tried to notify respondent minor's parents or Anna W. that the court was detaining respondent minor.

In September 2007, the trial court held a status hearing that neither Anna W. nor respondent minor's parents attended. The record does not reflect that respondent minor's father, respondent minor's mother, or Anna W. was given any kind of notice of this hearing. At the hearing, the public defender asked for respondent minor's release from the detention center. The State responded:

> "Well, Judge, in light that the respondent minor has no guardian or custodian to release him to, and in light of the nature and circumstances of the allegations in the petition to revoke, the State does feel that it is still a matter of immediate and urgent necessity that he be further detained."

The trial court released respondent minor from detention pending further proceedings.

At a hearing on October 1, 2007, the public defender stated respondent minor would be admitting the allegations in the petition to revoke probation. The trial court admonished respondent minor as to the rights he was giving up by admitting the allegations. Respondent minor answered he was offering to admit the charges and that it was his intent to admit the charges. However, respondent minor never actually admitted the allegations. The court treated respondent minor's offer to admit as an admission, found respondent minor willfully violated the terms of his probation as alleged in the petition to revoke his probation, and revoked respondent minor's probation.

At respondent minor's October 29, 2007, sentencing hearing, the State adopted the recommendations made by the court-services department in its sentencing-hearing report filed with the court on October 24, 2007. That report recommended respondent minor be sentenced to DJJ. Respondent minor requested a community-based sentence. The trial court committed respondent minor to the DJJ for an indeterminate amount of imprisonment not to exceed seven years or his twenty-first birthday, whichever occurred first. In making its ruling, the court noted that, like the State, it had no idea why Onarga would release respondent minor into the Champaign-Urbana community without any adult supervision.

The sentencing-hearing report listed both respondent minor's mother's address and Anna W.'s address in Kankakee, Illinois. In January 2008, the trial court granted respondent minor leave to file

an amended motion to reconsider his sentence, which it denied after hearing arguments.

During the proceedings on the petition to revoke respondent minor's probation, the State never explained whether it made any effort to locate or give notice to respondent minor's parents or why it did not name Anna W. In addition, the trial court neither made any inquiry as to the State's effort to find respondent minor's parents or Anna W. nor made any inquiries of the individuals present at the hearings as to the whereabouts of respondent minor's parents or Anna W. However, respondent minor never objected to the lack of notice given to Anna W. or his parents. Neither of respondent minor's parents nor Anna W. attended any of the hearings on the petition to revoke respondent minor's probation.

This appeal followed.

## II. ANALYSIS

In his initial brief to this court, respondent minor argued the trial court did not have jurisdiction to revoke his probation because the State failed (1) to name respondent minor's guardian in its petition to revoke probation and (2) to serve notice on a single adult corespondent. However, because of our supreme court's opinion in *In re M.W.*, 232 Ill. 2d 408 (2009), respondent minor now only argues the State's failure to (1) name respondent minor's guardian in its petition to revoke respondent minor's probation and (2) serve proper notice of the revocation proceedings on a single adult corespondent violated his due-process rights. According to respondent minor, the failure to provide notice to his mother or Anna W. affected the fundamental fairness of the proceedings on the petition to revoke respondent minor's probation. Respondent minor makes no argument regarding his father. Respondent minor admittedly forfeited these arguments but contends we should review his arguments pursuant to the plain-error doctrine.

Our supreme court has stated the first thing a court must do under a plain-error analysis is determine whether an error actually occurred. *M.W.*, 232 Ill. 2d at 431. If an error is found, a court of review will grant relief in two situations:

> "(1) if 'the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant,' or (2) if the error is 'so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process.' [Citation.]" *M.W.*, 232 Ill. 2d at 431.

As a result, we first must determine whether the State erred by failing to name Anna W. in the petition to revoke respondent minor's probation. We then must determine whether the failure to give proper notice to respondent minor's mother or Anna W. constitutes error.

## A. Failure To Name Anna W.

■ Respondent minor first argues the State's failure to name Anna W. in the petition to revoke constitutes error. The State argues it did not need to name Anna W. because she was no longer respondent minor's guardian.

The State points to a September 30, 2005, circuit court order that transferred the guardianship and custody of respondent minor to Kankakee County juvenile court services. At the September 30 hearing, the trial court stated:

> "Now, as far as guardianship and custody. The—the [c]ourt finds that for reasons other than financial reasons alone the minor's father—or excuse me—the minor's parents and his guardian are unable to care for, protect, train[,] and discipline him, that efforts have been made to keep that family together, those efforts have proved unsuccessful and that placement under [s]ection 5—740 of the Juvenile Court Act [of 1987 (Act) (705 ILCS 405/5—740 (West 2006))] is in the best interest of the minor, and accordingly the [s]upervisor of [p]robation for Kankakee County is appointed the guardian and custodian of the minor."

According to the State, court services was still respondent minor's guardian during the probation-revocation proceedings, although the August 29, 2007, detention report listed Anna W. as the minor's legal guardian. The State points to section 5—740(6) of the Act, which states "[l]egal custody or guardianship granted under this [s]ection continues until the court otherwise directs, but not after the minor reaches the age of 21 years" (705 ILCS 405/5—740(6) (West 2006)). Nothing in the record suggests guardianship of respondent minor was ever removed from Kankakee County juvenile court services until respondent minor was sent to DJJ after his probation was revoked.

The parties have not addressed whether the transfer of probation from Kankakee County to Champaign County also transferred guardianship from Kankakee County juvenile court services to Champaign County juvenile court services. Since this important question was not raised or briefed, we decline to address it. However, we note the record reflects no attempt to notify Kankakee County juvenile court services of the supplemental proceedings in Champaign County.

In *People v. R.D.S.*, 94 Ill. 2d 77, 78-79, 445 N.E.2d 293, 294 (1983), the supreme court dealt with the issue of whether the "jurisdiction of the circuit court [is] properly invoked when the State fails to name or notify a court-appointed guardian of a minor in a proceeding brought against [a] guardian's charge." The court held the trial court's jurisdiction was not properly invoked and its order void because the State had neither named nor notified the guardian of the proceeding. *R.D.S.*, 94

Ill. 2d at 83, 445 N.E.2d at 296. The guardian in question in *R.D.S.* was the guardian administrator of the Department of Children and Family Services, who had been appointed when the court in previous unrelated proceedings found the parents were unable to care for the minor. *R.D.S.*, 94 Ill. 2d at 79, 445 N.E.2d at 294.

While the portion of the court's order in *R.D.S.* holding the trial court's order was void has been overruled (see *M.W.*, 232 Ill. 2d at 426), the following discussion by the court is still relevant in determining who the State was required to name pursuant to section 5—520(2)(d) of the Act (705 ILCS 405/5—520(2)(d) (West 2006)). The court stated:

"While subsection (d) [(Ill. Rev. Stat. 1979, ch. 37, par. 704—1(2)(d)), which is nearly identical to section 5—520(2)(d) (705 ILCS 405/5—520(2)(d) (West 2006)),] reads in the disjunctive, we note that the entire section reads in the conjunctive. A petition filed pursuant to section 4—1(2) is required to set forth facts for each of the subsections or else indicate that such facts are unknown.

The question to determine here is whether the mother had custody or control of the minor as contemplated by the Act. If she did not, then the guardian was required to be named as a respondent.

The Act provides that custody or guardianship granted thereunder continues until the court otherwise directs [citation]. The minor or any person interested in the minor may apply to the court for a change in custody of the minor or for restoration of the minor to the custody of his parents. [Citation.] ***

Under the Act, guardianship of the person of a minor includes 'the rights and responsibilities of legal custody except where legal custody has been vested in another person or agency.' [Citation.] 'Legal custody' means the relationship created by an order of court which imposes on the custodian the responsibility of physical possession of a minor, the duty to protect, train[,] and discipline him and to provide him with food, shelter, education[,] and ordinary medical care. [Citation.]

Neither the minor, the minor's mother, the guardian, nor any other interested party ever filed a petition with the circuit court seeking a change in custody prior to the filing of the three petitions at issue here. Legal custody of the minor was never removed from the guardian and restored to the minor's mother.

The mother, at the time the petitions were filed, did not have the status of a person having custody or control of the minor as the State urges. She was properly named a respondent pursuant to section 4—1(2)(c) because she was a parent. However, the mother could not be named under section 4—1(2)(d) as an alternative to

naming the legal guardian. Section 4—1(2)(d) required that the petitions filed in this case name the guardian as a necessary party respondent." *R.D.S.*, 94 Ill. 2d at 82-83, 445 N.E.2d at 295-96.

As a result, the State did not violate section 5—520 of the Act (705 ILCS 405/5—520 (West 2006)) when it did not name Anna W. in the petition to revoke because she was no longer his guardian for purposes of the Act. However, the State clearly failed to follow the requirements of section 5—520 of the Act when it failed to name respondent minor's legal guardian in the petition to revoke respondent minor's probation. Although supervision of the respondent minor's probation was transferred to Champaign County, nothing in the record discloses the guardianship of Kankakee County juvenile court services was terminated, transferred, or altered in any way. As previously stated, the parties failed to address this issue.

### B. Notice to Respondent Minor's Mother and Anna W.

■ Respondent minor argues the failure to provide notice of the probation-revocation proceedings to either respondent minor's mother or Anna W., whose addresses were known to the State, constitutes error. The State argues the Act required it to give notice of the petition to revoke respondent minor's probation to respondent minor, his parents, and his guardian. Because Anna W. was no longer respondent minor's guardian during the probation-revocation proceedings, the State argues it did not need to give her notice. The State makes two arguments regarding its failure to give notice to respondent minor's mother. First, according to the State, respondent minor's mother was in the custody of the Illinois Department of Corrections (IDOC) during the probation-revocation proceedings and could not have been served at the address found in the record. Second, respondent minor forfeited this argument by failing to raise it in the trial court.

Respondent minor recognizes he forfeited his argument regarding the lack of notice to both Anna W. and his mother. However, as stated previously, he argues we should consider his arguments under the plain-error doctrine. As a result, we first address whether the failure to give notice to Anna W. or respondent minor's mother constitutes error.

Section 5—530(1) of the Act states:

"A party presenting a supplemental or amended petition or motion to the court shall provide the other parties with a copy of any supplemental or amended petition, motion[,] or accompanying affidavit not yet served upon that party, and shall file proof of that service ***. Written notice of the date, time[,] and place of the hearing, shall be provided to all parties in accordance with local court rules." 705 ILCS 405/5—530(1) (West 2006).

While we have found the State was not statutorily required to name Anna W. in its petition to revoke respondent minor's probation pursuant to section 5—520 of the Act (705 ILCS 405/5—520 (West 2006)), Anna W. was still a party to the proceedings. She was named in the original delinquency petition, had been respondent minor's guardian since he was one year old, and had made numerous appearances during the initial proceedings. As we will discuss later, section 5—525 of the Act (705 ILCS 405/5—525(3) (West 2006)) provides that "[o]nce jurisdiction has been established over a party, further service is not required and notice of any subsequent proceedings in that prosecution shall be made in accordance with provisions of [s]ection 5—530." See also *M.W.*, 232 Ill. 2d at 428-29. The record does not reflect that Anna W. had ever been dismissed from the proceedings. As a result, the State needed to provide her with notice of the revocation proceedings pursuant to section 5—530 of the Act (705 ILCS 405/5—530 (West 2006)).

From the record, it appears Anna W. received actual notice via a telephone call at approximately 6:10 p.m. on August 28, 2007, of respondent minor's detention hearing scheduled for the next day. According to the Champaign County juvenile detention center detention report filed on August 29, 2007, Anna W. stated she would not be able to attend the detention hearing because she had recently been discharged from the hospital. However, it does not appear Anna W. received a copy of the petition to revoke respondent minor's probation or notice of any of the other hearing dates pertaining to the petition to revoke even though it is clear the State had the ability to contact her.

It was error for Anna W. not to be given proper notice because she was a party to the proceeding. See *In re C.R.H.*, 163 Ill. 2d 263, 268-69, 644 N.E.2d 1153, 1156 (1994), *overruled on other grounds in M.W.*, 232 Ill. 2d at 426. The effects of this error are magnified because (1) she had been respondent minor's custodial guardian from his infancy to his placement at Onarga, and (2) the State claimed it did not know how to contact respondent minor's parents.

As for the lack of notice to respondent minor's mother, the State does not argue she was not entitled to notice. Rather, the State claimed in its petition that it did not know respondent minor's mother's address. However, the record clearly reflects the State had an address for respondent minor's mother. Whether this address was accurate during the pendency of the revocation proceedings is unknown because the State did not attempt to serve notice on respondent minor's mother at that location.

The State argues that, according to the IDOC Web site, respondent minor's mother was incarcerated as of April 18, 2007. However, this

information is outside the record and will not be considered. Even if respondent minor's mother was in IDOC custody as the State argues, the State should have had no problem locating her to provide her with proper notice. With notice, the minor's mother, even if incarcerated, would have been able to request another adult relative attend the hearings.

Failure to notify respondent minor's mother and Anna W. of the probation-revocation proceedings constitutes clear error. Having found clear error, we must next determine whether that error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the probation-revocation proceedings.

## C. Plain Error

According to respondent minor, the State's failure to provide notice to his parents or Anna W. affected the fundamental fairness of the revocation proceedings. We agree. A minor's due-process rights are violated when proper notice is not given to a parent or guardian with a known address. *C.R.H.*, 163 Ill. 2d at 268-69, 644 N.E.2d at 1156. This is not a case where we can assume the State diligently tried to locate respondent minor's mother or Anna W.

In the case *sub judice*, the State possessed addresses for both respondent minor's mother and Anna W. From the record, it does not appear the State even made an attempt to give proper notice to either respondent minor's mother or Anna W. We also note the record does not reflect any attempt by the trial court to provide notice to respondent minor's parents or Anna W. pursuant to the statutory requirements relating to probation revocation proceedings.

According to section 5—720 of the Act:

"(1) If a petition is filed charging a violation of a condition of probation or of conditional discharge, the court shall:

(a) order the minor to appear; or

(b) order the minor's detention if the court finds that the detention is a matter of immediate and urgent necessity for the protection of the minor or of the person or property of another or that the minor is likely to flee the jurisdiction of the court, provided that any such detention shall be in a juvenile detention home and the minor so detained shall be 10 years of age or older; and

(c) notify the persons named in the petition under [s]ection 5—520, in accordance with the provisions of [s]ection 5—530." 705 ILCS 405/5—720(1) (West 2006).

The respondent minor's parents were named in the petition to revoke, but the court never made an attempt to notify either of them as directed by statute.

In *C.R.H.*, 163 Ill. 2d at 270-71, 644 N.E.2d at 1157, our supreme court discussed the notice requirements under the Act. In addressing the State's argument that the court should not interpret *In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967), as requiring the State to provide formal written notice to parents because situations exist where such notice is impossible, the court stated:

> "This court has already addressed this matter in the context of an unknown noncustodial parent. In *In re J.W.*[, 87 Ill. 2d 56, 60-61, 429 N.E.2d 501 (1981)], this court recognized service by publication where individual service is impossible. The court went further and held that failure to serve notice of delinquency proceedings, by publication, on the minor's unknown father did not violate due process. [Citation.] In reaching this result, the court noted that the father and his whereabouts were unknown, and that there was notice to the custodial mother. [Citation.] A similar result was reached in *In re J.P.J.*[, 109 Ill. 2d 129, 485 N.E.2d 848 (1985)], where this court found that notice in a juvenile[-]delinquency proceeding was adequate despite the fact that the noncustodial parent was not served with notice. Once again, the court relied on the fact that the noncustodial parent's whereabouts were unknown and the custodial parent received notice. [Citation.] Thus, this court has recognized exceptions to formal written notice under limited circumstances. Nevertheless, these exceptions have not altered this court's prior holding that notice is a constitutional right (*i.e.*, in those cases where notice to a noncustodial parent was excused, there was still notice to a custodial parent).
>
> The instant case is distinguishable from *J.W.* and *J.P.J.* because there was no form of notice to C.R.H.'s mother, who was the custodial parent. The record contains no form of notice to C.R.H.'s mother and reveals that she was not present at either the adjudicatory or the dispositional hearings concerning the amended supplemental petition. Thus, this case does not fall within the exceptions to formal written notice previously recognized by this court." *C.R.H.*, 163 Ill. 2d at 270-71, 644 N.E.2d at 1157.

As a result, our supreme court found C.R.H.'s due-process rights were violated. *C.R.H.*, 163 Ill. 2d at 271, 644 N.E.2d at 1157.

In *In re M.W.*, the respondent minor argued that "even if the circuit court had subject[-]matter jurisdiction over the matter and personal jurisdiction over all parties, the State's failure to give notice to her father of the amended petition violated her due[-]process rights." *M.W.*, 232 Ill. 2d at 429. M.W. suggested that her father "might have been motivated to attend the later proceedings if he had been aware of the seriousness of the charges against her and that she might have benefitted from his advice and counsel." *M.W.*, 232 Ill. 2d at 430.

M.W. did not raise this issue before the trial court. As a result, the supreme court reviewed the alleged error pursuant to the plain-error doctrine. *M.W.*, 232 Ill. 2d at 431-32. The supreme court found the State's failure to give the respondent minor's father notice of the amendment was error. *M.W.*, 232 Ill. 2d at 432. According to the court:

"A party's appearance in a proceeding under the Act constitutes consent to personal jurisdiction and waiver of formal service of 'the petition' that is pending at that time. 705 ILCS 405/5—525(4) (West 2004). It does not constitute waiver of notice of supplemental or amended petitions under section 5—530. Indeed, section 5—525(3) specifically provides for subsequent notice under section 5—530 to parties over whom 'jurisdiction has been established.' 705 ILCS 405/5—525(3) (West 2004). Based on the plain language of the applicable sections of the Act, we conclude that the error was also clear and obvious." *M.W.*, 232 Ill. 2d at 432.

The court was then left to determine if a remedy for the error was required. *M.W.*, 232 Ill. 2d at 432. The court stated:

"M.W. argues that if her father had known of the addition of the aggravated[-]battery charge, he might have attended the adjudicatory hearing and that she might have benefitted from his advice and his presence. At oral argument, counsel for M.W. suggested that her father, if he had been present, might have encouraged her to take responsibility for the lesser offense of aggravated battery while denying responsibility for the greater offense of robbery, leading to a lesser sentence.

However, she does not suggest how the fairness of the proceeding was undermined by his absence. Her mother was present at the hearing and she was represented by counsel. Either of these advisors could have counseled her in the manner suggested by appellate counsel. The one significant decision that she seems to have made, presumably with the advice of these adults, is to testify to her own version of the events on the bus. Even if her father had been present and had persuaded her not to testify, the outcome would not have been different, because there would have been no rebuttal whatsoever to the testimony of the State's witnesses.

We fail to see how the error of failing to give notice of the amended petition to her father, when he had been given notice at the commencement of the proceedings pursuant to section 5—525(4) of the Act and when he had actual notice of the more serious of the two charges, affected the fairness of M.W.'s adjudication or undermined the integrity of the process." *M.W.*, 232 Ill. 2d at 439-40.

The court went on to find M.W. was not entitled to a new adjudicatory hearing on the basis of plain error. *M.W.*, 232 Ill. 2d at 440.

What distinguishes the case *sub judice* from *In re M.W.* is that in the instant case, with the exception of a telephone call to Anna W. the evening prior to respondent minor's detention hearing, the record does not reflect that anyone—not the State, the trial court, or respondent minor's counsel—gave any notice of any of the revocation proceedings to either of respondent minor's parents or Anna W., the woman who had raised him since he was one year old. In addition, neither of respondent minor's parents nor Anna W. appeared for any of the revocation proceedings.

As our supreme court noted in *M.W.*, 232 Ill. 2d at 428-29, section 5—525(3) of the Act (705 ILCS 405/5—525(3) (West 2006)) specifically provides for subsequent notice, under section 5—530 of the Act (705 ILCS 405/5—530 (West 2006)), of a supplemental petition to parties over whom jurisdiction has been established. Jurisdiction had already been established over the respondent minor's mother, father, and Anna W. in the delinquency proceeding in Kankakee County. Pursuant to our supreme court's decision in *M.W.*, the failure to provide notice to these individuals was clear and obvious error.

The lack of notice to either of respondent minor's parents or Anna W. combined with the lack of participation by any of these individuals undermined the integrity of these juvenile-court proceedings. This is particularly apparent where the State argued, and the sentencing court considered, the lack of adult supervision in fashioning its sentence of commitment to DJJ.

One of the purposes of the Act is to "preserve and strengthen the minor's family ties whenever possible, removing him or her from the custody of his or her parents only when his or her safety or welfare or the protection of the public cannot be adequately safeguarded without removal." 705 ILCS 405/1—2(1) (West 2006). In addition, section 5—110 of the Act, which deals with parental responsibility for delinquent minors, states as follows:

> "This [a]rticle recognizes the critical role families play in the rehabilitation of delinquent juveniles. Parents, guardians[,] and legal custodians shall participate in the assessment and treatment of juveniles by assisting the juvenile to recognize and accept responsibility for his or her delinquent behavior. The [c]ourt may order the parents, guardian[,] or legal custodian to take certain actions or to refrain from certain actions to serve public safety, to develop competency of the minor, and to promote accountability by the minor for his or her actions." 705 ILCS 405/5—110 (West 2006).

Respondent minor's parents, Anna W., and consequently part of the purpose of the Act were all essentially ignored in these probation-revocation proceedings.

Our supreme court's decision in *J.W.*, 87 Ill. 2d 56, 429 N.E.2d 501, supports our decision that the failure to give proper notice to either respondent minor's mother, father, or Anna W. of the probation-revocation proceedings constitutes plain error. In *J.W.*, our supreme court determined that a juvenile court could hold an adjudicatory hearing without serving notice on the minor's father, whose identity and location were unknown and with whom the minor had never had any contact, because notice to the custodial mother was enough. *In re J.W.*, 87 Ill. 2d at 58-62, 429 N.E.2d at 502-04.

In support of its decision, our supreme court stated:

"When someone not only does not share in the custody of the minor, but has so little contact with the minor that he does not learn of the minor's danger and cannot after diligent search be found, his interest is sufficiently slight that he should not be treated as an indispensable party; and the absence of such a comparative stranger does not deprive the minor of any substantial protection if the minor has the assistance of his custodian, the person on whom he relies for other important decisions in his life." *In re J.W.*, 87 Ill. 2d at 61, 429 N.E.2d at 504.

The court described respondent minor's father as "a stranger to the minor" and stated "[t]he minor could not reasonably repose in him any special trust or confidence." *In re J.W.*, 87 Ill. 2d at 58-59, 429 N.E.2d at 502.

However, the supreme court noted the father would need to be provided notice by publication upon remand for further proceedings because respondent minor's mother had died. According to the court:

"Additional proceedings must occur in the juvenile court, and the minor's mother is no longer there to stand with him. The minor's mother has died. He is no longer in her custody. Notice to and participation by her in the past is therefore no longer sufficient under section 4—4. In fact, the minor does not now appear to have any custodian or guardian. His father may be the only adult in the world from whom he can claim or hope for any loyalty or help whatsoever. Even a slight hope is better than nothing. Moreover, the court's disposition of the minor may be influenced by whether there is any adult willing to take responsibility for him[,] and the father may be the only candidate." *In re J.W.*, 87 Ill. 2d at 62-63, 429 N.E.2d at 504.

This language shows the importance our supreme court has placed on a minor having at least one person, besides an attorney or court-appointed guardian, present during juvenile proceedings whose only loyalty and concern would be toward the minor, even when the minor has little or no relationship with that individual.

■ In the case *sub judice*, respondent minor had a relationship with his parents and Anna W. Each of these individuals had participated to some extent in the Kankakee County proceedings. Despite having addresses for respondent minor's mother and Anna W., the State made no attempt to provide notice to them of the probation-revocation proceedings. The outcome of respondent minor's sentencing hearing may have been different if an adult had been present and indicated a willingness to take respondent minor back home with him or her to Kankakee County. Indeed, the State argued on more than one occasion for imprisonment of the minor because respondent minor had no adult supervision in Champaign County. The trial court also, at sentencing, noted the lack of adult supervision for the respondent minor. The State's failure to provide respondent minor's mother and Anna W. with notice of the probation-revocation proceedings constitutes plain error.

Unfortunately, the procedural requirements of the Act are frequently ignored. For over 20 years, Illinois appellate courts have recognized a lack of attention to the procedural requirements of the Act by trial courts (see *In re T.A.*, 181 Ill. App. 3d 1034, 1039, 537 N.E.2d 1118, 1121 (1989) ("we also note the lax attention by the trial court to the procedural requirements of the Juvenile Court Act")) and the State (see *In re L.C.C.*, 167 Ill. App. 3d 670, 673, 521 N.E.2d 652, 654 (1988) ("An increasing number of cases suggest the State is inattentive to the notice requirements of the [Juvenile Court] Act")). In this case, the trial court, the State, and the respondent minor's counsel all ignored the Act's notice requirements. To allow a minor to be committed to DJJ, in part because no adult supervision appears available, where no attempt is made to provide notice to any adult in the minor's life, violated the fundamental due-process rights of this minor.

Finally, we again note defendant never actually admitted the allegations in the petition to revoke his probation. On remand, if respondent minor chooses to admit the allegations in the State's petition after the procedural requirements of the Act have been met, the trial court should ensure respondent minor actually admits the allegations on the record.

## III. CONCLUSION

For the reasons stated, we vacate the respondent minor's "admission," reverse the revocation of respondent minor's probation, and remand so that the State may give proper notice to respondent minor's parents and Anna W. if it wishes to again pursue the revocation of respondent minor's probation. The parties should also consider

whether Kankakee County juvenile court services is entitled to notice as respondent minor's guardian.

Reversed and remanded; respondent minor's "admission" vacated.

TURNER and APPLETON, JJ., concur.