2019 IL App (4th) 190051
NO. 4-19-0051

FILED
May 28, 2019
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* T.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
|       Petitioner-Appellee, | ) | No. 17JD78 |
|       v. | ) | |
| T.R., | ) | Honorable |
|       Respondent-Appellant). | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Knecht and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1      In April 2017, the State filed a petition for adjudication of wardship, alleging respondent, T.R. (born April 3, 2001), committed criminal sexual assault (penis to vagina) (720 ILCS 5/11-1.20(a)(1) (West 2016)), criminal sexual abuse (in that he used force to touch the vagina of I.P.-V. (born March 31, 2002)) (*id.* § 11-1.50(a)(1)), and criminal sexual abuse (in that he committed an act of sexual penetration with I.P.-V. when she was between the ages of 13 and 17 years old and respondent was less than 5 years older than I.P.-V.) (*id.* § 11-1.50(b)). In July 2018, after a bench trial, the trial court adjudicated T.R. to be a delinquent minor. In December 2018, the court made T.R. a ward of the court, sentenced him to 36 months' probation, and imposed 30 days of detention to be stayed pending completion of probation.

¶ 2      Respondent appeals, arguing (1) the trial court erred by considering evidence not presented at trial, (2) respondent's counsel gave ineffective assistance by stipulating to the

introduction of deoxyribonucleic acid (DNA) evidence that supported the State's case, (3) the trial court should have conducted a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), (4) the trial court erred by admitting testimony regarding statements respondent made during a polygraph examination for the purpose of impeachment, and (5) respondent's convictions for criminal sexual abuse should merge with his criminal sexual assault conviction pursuant to the one-act, one-crime doctrine. We agree with respondent's third argument and remand for a *Krankel* hearing.

¶ 3                                    I. BACKGROUND

¶ 4                        A. The Petition for Adjudication of Wardship

¶ 5            In April 2017, the State filed a petition for adjudication of wardship, alleging respondent was a delinquent minor and should be made a ward of the court. The State alleged that in March 2017, T.R. committed three sex crimes against I.P.-V. Specifically, the State contended T.R. (1) committed criminal sexual assault by placing his penis in I.P.-V.'s vagina by the use of force, (2) committed criminal sexual abuse by knowingly and through the use of force touching I.P.-V.'s vagina for the purpose of sexual gratification, and (3) committed criminal sexual abuse by placing his penis in I.P.-V.'s vagina when she was between the ages of 13 and 17 years old and respondent was less than 5 years older than I.P.-V.

¶ 6                                    B. The Bench Trial

¶ 7            In June 2018, the trial court conducted a bench trial. The State presented testimony from I.P.-V. and her cousin, X.P., that in March 2017, the two went to meet X.P.'s boyfriend, Devan, and ended up going to respondent's apartment. I.P.-V. testified that while X.P. and Devan were in a separate room, respondent, with whom she had been "laughing" and "playing around," picked her up and took her to another bedroom, where he held her down and

put his penis in her vagina for "maybe a minute." I.P.-V. left shortly thereafter and went to the hospital, where a rape kit was administered. The State then stipulated that the court could consider a report that indicated "[t]he DNA profile obtained from the sperm fraction (SF) of [the vaginal swab sample] is consistent with a mixture of two individuals including the victim and one male contributor." The report concluded that the "deduced male component DNA profile matches the DNA profile obtained from [respondent's] sample."

¶ 8          Respondent testified that when X.P. and Devan left the room, he and I.P.-V. continued to flirt. Respondent stated that, eventually, I.P.-V. put her hand down his pants and touched his penis. Respondent said he placed his hand down her pants and touched her vagina but did not touch "inside the hole."

¶ 9          On cross-examination, the trial court permitted the State to use statements respondent gave during a polygraph examination to impeach his testimony. Respondent objected to the use of these statements as impeachment evidence, but the trial court overruled the objection and permitted respondent to file a memorandum in support of his objection after the conclusion of the hearing. Respondent denied making a particular statement to the polygraph examiner, and the State called the polygraph examiner in rebuttal to complete its impeachment of respondent regarding that statement.

¶ 10          In closing argument, respondent's counsel's contended that (1) the DNA testing did not demonstrate that respondent's sperm was present and (2) the match could have been from skin cells left by respondent's hand. The State argued that the "DNA profile is sperm fraction," which could only be determined from testing "because you cannot tell it is sperm without doing a test." The trial court took the matter under advisement and set the case over for a hearing on respondent's objection to the polygraph impeachment and for the court to issue a ruling.

¶ 11                    C. The Trial Court's Ruling

¶ 12        In July 2018, the trial court resumed the proceedings. Before addressing the testimony and the evidence, the court stated that it received an envelope from respondent's mother but had not opened it. The following discussion then took place:

"THE COURT: Before the Court gives its ruling, Court would note first that on late Thursday afternoon, I received an envelope from [respondent's mother] addressed to me that I did not open.

Mr. Feldman [(respondent's counsel)], I'm going to provide that to you.

Ms. [respondent's mother], I cannot receive correspondence from parents with respect to a case. I had received correspondence in times past from parents, for example, who are incarcerated and want to be brought to court. But I did not want to open that and review any of that information, so I'm giving that to Mr. Feldman who is [T.R.'s] attorney and let him review it and for you to discuss that with him.

Mr. Feldman, do you need some time to review it and talk with [respondent's mother]?

MR. FELDMAN: I'm reading it right now, Your Honor. Your Honor, if we could have a sidebar a moment.

(The following conversation was held at the bench.)

MR. FELDMAN: This is sort of a mixed bag. Some of it I don't think the Court would probably consider at this point. I think it is argument by the mother on the minor's behalf. Some of it is an issue [in] that she has complaints about my performance. I think the Court ought to be aware of it. Obviously, I would have to

let you know and provide copies to the State as well. I think the Court can review it. Probably parts the Court may consider, may not consider. I think it should be at least made to supplement the record. But I don't think we need anything additional as far as argument at this point in time. Because of the issue she's raised, I think the Court has to take a look at it.

MS. LAWSON [(ASSISTANT STATE'S ATTORNEY)]: I haven't seen it yet, Your Honor. I think that what Mr. Feldman is representing is for appeal, not what's important to the Court to review before giving a ruling for today's purposes. So, I think that if the Court wanted to review it, it probably should not be done until after a ruling has been made. And if ineffective assistance of counsel is a reason for appeal, it's not a reason not to give a ruling on a case.

THE COURT: Any response, Mr. Feldman?

MR. FELDMAN: I don't have much of a response at this point, Your Honor. Again, I think the Court needs to be made aware of that. She also inquired if the Court received correspondence from another individual, Mr. Dunson, D-U-N-S-O-N. I don't believe the Court has or the Court would have made us aware of that.

THE COURT: I have not.

MR. FELDMAN: All right. Then what I'm going to do is hang on to this. Have a ruling pending, and I can supplement the record if necessary.

THE COURT: All right.

(Sidebar concluded.)

THE COURT: Before the Court begins, Court would note that it was also provided with a memorandum regarding the State's use of the polygraph information as impeachment that was filed by Mr. Feldman."

¶ 13 The trial court did not again refer to the envelope or its contents. Instead, the trial court addressed respondent's argument regarding the polygraph evidence. The trial court concluded the testimony was admissible for the purpose of impeachment as a prior inconsistent statement.

¶ 14 The trial court then recounted the testimony of the witnesses at trial in some detail. The court believed that, based on the conflicting testimony of respondent and I.P.-V., the question was "was it consensual or nonconsensual?" The court believed the answer was in the DNA evidence stipulation. The court explained the meaning of the term "sperm fraction" and that male DNA can only be profiled if sperm is present. However, neither the stipulation nor the report contained this information. The court concluded that respondent committed an act of sexual penetration because his DNA profile was found in the sperm fraction from the vaginal swab. Accordingly, the trial court (1) found respondent guilty of all three offenses alleged in the petition, (2) adjudicated respondent to be a delinquent minor, and (3) continued the matter for sentencing.

¶ 15                     D. The Sentencing Hearing

¶ 16 In December 2018, the trial court conducted a sentencing hearing. Before sentencing respondent, the court noted that it based its finding of guilt on "the scientific evidence, which in my mind leaves no dispute as to what occurred based upon the rest of the evidence that was presented." The court found it was in respondent's best interest and the best interest of the public that he be made a ward of the court. The court imposed the statutory

- 6 -

minimum sentence of 36-months' probation and imposed 30 days of detention, which the court stayed pending completion of probation.

¶ 17    This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19    Respondent appeals, arguing (1) the trial court erred by considering evidence not presented at trial, (2) respondent's counsel gave ineffective assistance by stipulating to the introduction of DNA evidence that supported the State's case, (3) the trial court should have conducted a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), (4) the trial court erred by admitting testimony regarding statements respondent made during a polygraph examination for the purpose of impeachment, and (5) respondent's convictions for criminal sexual abuse should merge with his criminal sexual assault conviction pursuant to the one-act, one-crime doctrine. We agree with respondent's third argument and remand for a *Krankel* hearing.

¶ 20            A. The Applicable *Krankel* Law and Standard of Review

¶ 21    "When a *pro se* defendant makes a posttrial claim of ineffective assistance of counsel, the trial court's responsibility to follow the common law procedure in *Krankel* is triggered." *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 12. The only question to be resolved by a *Krankel* hearing is whether the trial court should appoint new counsel to represent the defendant on his claims of ineffective assistance of counsel. *People v. Roddis*, 2018 IL App (4th) 170605, ¶ 47, 119 N.E.3d 52. The court need not appoint new counsel if the defendant's claims are without merit or pertain solely to matters of trial strategy. *Id.* ¶ 63. To determine whether new counsel should be appointed, a trial court should ordinarily inquire into the factual basis of the defendant's claims by (1) asking the defendant about the claims, (2) asking defense counsel

about the claims, and (3) relying upon its knowledge of counsel's performance. *Id.* ¶¶ 58-59.

¶ 22    "[A] *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention ***." (Internal quotation marks omitted.) *People v. Ayres*, 2017 IL 120071, ¶ 11, 88 N.E.3d 732. "Accordingly, a defendant may raise the claim orally or in writing, either by filing a formal posttrial motion with the court or by informally providing a letter." *Rhodes*, 2019 IL App (4th) 160917, ¶ 13. Even if the defendant makes the bare allegation of "ineffective assistance of counsel," a trial court is required to conduct a *Krankel* inquiry. *Id.*

¶ 23    The purpose of a *Krankel* inquiry is to allow defendants to flesh out their claims and limit the issues on appeal. *Ayres*, 2017 IL 120071, ¶ 13. A trial court's failure to conduct an adequate *Krankel* inquiry requires that the case be remanded. See *id.* ¶¶ 24-26. The appellate court reviews *de novo* whether a trial court should have conducted a *Krankel* inquiry and whether that inquiry was sufficient. *People v. Jolly*, 2014 IL 117142, ¶ 28, 25 N.E.3d 1127; *People v. Taylor*, 237 Ill. 2d 68, 75, 927 N.E.2d 1172, 1176 (2010).

¶ 24                    B. A *Krankel* Hearing Was Required in This Case

¶ 25    Respondent argues that the trial court should have conducted a *Krankel* hearing when his counsel brought his mother's letter complaining of counsel's performance to the court's attention at the July 2018 hearing. Respondent recognizes that the allegation was raised prior to the trial court's ruling but asserts that the evidence and argument had been completed and all that remained was for the court to issue its decision on the record. Respondent claims that the trial court was required to conduct the *Krankel* hearing after finding respondent guilty. Respondent also acknowledges that his mother, not he, raised the ineffective assistance claim. Respondent contends that, because (1) his mother was a necessary party and (2) parents have a special role under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2016)) in delinquency

proceedings, his mother had standing to raise the ineffective assistance claim.

¶ 26    In response, the State argues that (1) *Krankel* does not apply to juvenile delinquency proceedings, (2) *Krankel* applies only to posttrial motions, and (3) a *Krankel* inquiry is required only when the claim is raised *pro se* by respondent. We disagree with the State and agree with all of respondent's contentions.

¶ 27         1. Krankel *Applies to Juvenile Delinquency Proceedings*

¶ 28    The State first argues that *Krankel* does not apply to juvenile delinquency proceedings. The State notes that (1) juvenile delinquency proceedings are civil in nature and (2) courts have declined to apply *Krankel* in cases under the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 2016)). The State also suggests that (1) applying *Krankel* is not required merely because juveniles have a right to counsel and (2) trial courts can intervene in the event of a substantial injustice. We conclude that the common-law requirements set forth in *Krankel* and subsequent cases apply to juvenile delinquency proceedings.

¶ 29    As an initial matter, we note that we are aware of only one published case, *In re Eric B.*, 351 Ill. App. 3d 1000, 1007, 815 N.E.2d 917, 923 (2004), in which a court has applied *Krankel* in the context of a juvenile delinquency proceeding. That case simply addressed the merits of whether the trial court conducted an adequate *Krankel* inquiry and concluded that the trial court did. In that case, the First District did not address the issue the State raises here—namely, whether *Krankel* applies at all in juvenile proceedings. *Id.* We conclude that (1) the purpose of *Krankel* applies equally to juvenile delinquency cases and (2) *Krankel* hearings should be conducted because juveniles who have been adjudicated delinquent have a very limited opportunity to raise ineffective assistance claims.

¶ 30        "Minors in delinquency proceedings *** have a constitutional right to counsel."
*People v. Austin M.*, 2012 IL 111194, ¶ 74, 975 N.E.2d 22. In particular, minors are entitled to
"*effective assistance* of counsel." (Emphasis in original.) *Id.* "[W]ith the exception of the right to
a jury trial, the fourteenth amendment to the United States Constitution extends to delinquent
minors all of the basic rights enjoyed by criminal defendants." *Id.* ¶ 76. Because the legislature
has amended the Juvenile Court Act to make "delinquency proceedings more akin to criminal
prosecutions," "the need for zealous advocacy to vindicate the constitutional rights of minors in
delinquency proceedings has become even greater." *Id.*

¶ 31        Although juvenile delinquency proceedings are not the equivalent to criminal
proceedings (see *In re Jonathon C.B.*, 2011 IL 107750, ¶ 96, 958 N.E.2d 227), it would be
anomalous if *Krankel* did not apply in delinquency proceedings.

¶ 32        The State correctly notes that juvenile delinquency proceedings are in fact civil in
nature even though juveniles are entitled to rights similar to that of criminal defendants. The
State argues that the appellate court has declined to extend *Krankel* to other quasi-criminal
proceedings, such as those under the Sexually Violent Persons Commitment Act (see *In re
Commitment of Walker*, 2014 IL App (2d) 130372, ¶ 56, 19 N.E.3d 205), and suggests we do the
same here. However, we conclude *Walker* is inapposite because of the unique circumstances of
delinquency proceedings.

¶ 33        In *Walker*, the Second District noted that (1) *Krankel* was not required by due
process and (2) most jurisdictions did not employ similar procedures. *Id.* The court concluded
that "[a]ny remedy for counsel's alleged incompetence would lie in a collateral attack." *Id.* But
juvenile delinquents cannot collaterally attack their judgments because the Post-Conviction
Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) applies only to convictions and persons

imprisoned in the penitentiary. *Id.* § 122-1(a). Juveniles are neither convicted nor imprisoned when they are adjudicated delinquent. *People v. Taylor*, 221 Ill. 2d 157, 168-69, 850 N.E.2d 134, 140 (2006); *In re Vincent K.*, 2013 IL App (1st) 112915, ¶ 50, 2 N.E.3d 506.

¶ 34   Moreover, the Illinois Supreme Court has held that petitions pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016))—the remedy suggested by the court in *Walker* instead of *Krankel*—do not provide an adequate remedy to preserve juveniles' claims of ineffective assistance of counsel. See *In re William M.*, 206 Ill. 2d 595, 604-05, 795 N.E.2d 269, 274 (2003) (holding section 2-1401 petitions only apply to newly discovered facts or changes in the law and therefore cannot be used to assert claims of general trial errors or a claim that counsel was ineffective for failing to file a motion to withdraw guilty plea). We note that, in this case, a section 2-1401 petition would have been inappropriate because the record demonstrates that the claim of ineffective assistance was discussed by the trial court and counsel in July 2018 and therefore could not be considered newly discovered.

¶ 35   This court has recognized that in some circumstances juveniles are unable to adequately present claims of ineffective assistance of counsel on direct appeal because they have not developed a factual record in the trial court and cannot do so in a collateral attack. See *In re Ch. W.*, 399 Ill. App. 3d 825, 830, 927 N.E.2d 872, 876 (2010). In those instances, we have remanded the case to the trial court for an evidentiary hearing while retaining jurisdiction. *Id.*; see also *In re Alonzo O.*, 2015 IL App (4th) 150308, ¶ 30, 40 N.E.3d 1228.

¶ 36   The Illinois Supreme Court has repeatedly explained that "the goal of any *Krankel* proceeding is to facilitate the trial court's full consideration of a defendant's *pro se* claim and thereby potentially limit issues on appeal." *Ayres*, 2017 IL 120071, ¶ 13. "[T]he primary purpose of the preliminary inquiry is to give the defendant an opportunity to flesh out his claim of

ineffective assistance so the court can determine whether appointment of new counsel is necessary." *Id.* ¶ 20. "By initially evaluating the defendant's claims in a preliminary *Krankel* inquiry, the circuit court will create the necessary record for any claims raised on appeal." *Jolly*, 2014 IL 117142, ¶ 38. "Absent such a record, *** appellate review is precluded. Moreover, the inquiry is not burdensome upon the circuit court, and the facts and circumstances surrounding the claim will be much clearer in the minds of all involved when the inquiry is made just subsequent to trial or plea, as opposed to years later on appeal." *Ayres*, 2017 IL 120071, ¶ 21.

¶ 37        Here, we do not know the basis of the mother's ineffective assistance claim because the trial court did not want to hear it and would not look at the letter despite trial counsel's invitation to do so. Most important, respondent does not have a remedy to develop his claims in collateral proceedings. Had the court conducted a brief inquiry when the court was informed of the mother's letter, the court could have determined (1) what respondent thought about the allegations in his mother's letter, (2) what the factual basis of the claim was, (3) whether respondent's counsel alleged ineffective assistance was actually a trial strategy, and (4) whether respondent needed new counsel to assert any potentially meritorious claims. *Krankel* inquiries like these would have gone a long way to developing a record on ineffective assistance claims generally, potentially avoiding the need to remand for a *Krankel* hearing after an appeal has been filed. See *Alonzo O.*, 2015 IL App (4th) 150308, ¶¶ 23-30 (explaining remand was necessary to develop a record of whether respondent's counsel investigated a key witness and why counsel chose not to impeach that witness with a prior conviction).

¶ 38        Finally, the State suggests that juveniles have a remedy because the trial court is in a "*parens patriae*" relationship with juveniles and "when it perceives a substantial injustice, [it] will intervene on the juvenile's behalf, even where the juvenile is represented by counsel

[citation]." *In re Vincent K.*, 2013 IL App (1st) 112915, ¶ 61. However, as respondent points out, the trial court in this case *was* presented with a claim that his counsel was ineffective but chose not to even read the letter detailing concerns about respondent's counsel despite counsel's requesting the court do so. Moreover, a trial court cannot intervene to ensure a juvenile receives effective assistance if the factual basis giving rise to the claim occurs outside of the courtroom.

¶ 39　　　　2. *The Ineffective Assistance Claim Was Raised Posttrial*

¶ 40　　　　Respondent argues that a *Krankel* inquiry was required after defense counsel told the trial court that his mother's letter alleged ineffective assistance. Although this claim could be viewed as not being raised posttrial, respondent argues that the adjudication hearing had concluded and all that remained was for the trial court to issue its ruling. Accordingly, respondent contends that the court should have conducted a *Krankel* hearing after announcing its findings and ultimate decision. We agree.

¶ 41　　　　We acknowledge that the supreme court in *Ayres* wrote that "*Krankel* is limited to posttrial motions" (*Ayres*, 2017 IL 120071, ¶ 22), but that holding does not mean that *Krankel* does not apply in this case. That is because, as respondent notes, the trial had concluded weeks before and all that remained was for the trial court to issue its ruling. When respondent's counsel called the mother's letter to the court's attention, the court knew it was about to rule against respondent, and it did just minutes later.

¶ 42　　　　Moreover, defense counsel told the trial court he believed it needed to consider the allegations and added that counsel would hold on to the letter pending the court's ruling. But after the court ruled, neither counsel nor the court raised the issue of the letter again.

¶ 43　　　　3. *Respondent's Mother Could Raise Ineffective Assistance*

¶ 44　　　　Respondent recognizes that *Krankel* is limited to *pro se* claims of ineffective

assistance and that he did not make any such claim in this case. Instead, his mother made it on his behalf. Respondent contends that his mother's claim in this case is more akin to a *pro se* claim because parents are necessary parties with special interests in juvenile delinquency proceedings. The State disagrees and notes that this court has held that *Krankel* applies only to *pro se* claims.

¶ 45    "*Krankel* is not triggered when counsel raises his own ineffectiveness." *Rhodes*, 2019 IL App (4th) 160917, ¶ 17 (citing *People v. Bates*, 2018 IL App (4th) 160255, ¶ 102, 112 N.E.3d 657, *appeal allowed*, No. 124143 (Ill. Jan. 31, 2019), and *People v. McGath*, 2017 IL App (4th) 150608, ¶¶ 49-52, 83 N.E.3d 671). Nonetheless, if defense counsel conveys a *defendant's pro se* claim of ineffectiveness to the court, a *Krankel* inquiry may be required. See *id.* We believe that the circumstances in this case are more similar to those in *Rhodes* because counsel was not arguing his own ineffectiveness. Instead, he was merely bringing respondent's mother's claim to the trial court's attention. Accordingly, the question before us is whether a parent may raise an ineffective assistance claim on behalf of her child, who is a respondent minor in a juvenile delinquency proceeding. Given the unique circumstances present in such a proceeding, we conclude that a parent may do so.

¶ 46    In cases under the Juvenile Court Act, custodial parents and legal guardians "have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also *** the right to be represented by counsel." 705 ILCS 405/1-5(1) (West 2016). In delinquency proceedings, parents generally have the right to adequate notice (*In re Gault*, 387 U.S. 1, 33 (1967)) and are considered parties to the proceedings. *In re Marcus W.*, 389 Ill. App. 3d 1113, 1122, 907 N.E.2d 949, 955 (2009). In juvenile delinquency proceedings, "[t]he purpose of a parent's presence is to

ensure the juvenile his right to counsel and his right to have his parents present at any hearing." *In re J.E.*, 285 Ill. App. 3d 965, 980-81, 675 N.E.2d 156, 167 (1996). Illinois courts have long recognized the importance of a parent's presence to provide aid and counsel to their child. See *Marcus W.*, 389 Ill. App. 3d at 1127 (noting "the importance our supreme court has placed on a minor having at least one person, besides an attorney or court-appointed guardian, present during juvenile proceedings whose loyalty and concern would be toward the minor."); see also *In re M.W.*, 232 Ill. 2d 408, 439, 905 N.E.2d 757, 777 (2009) (noting lack of notice to noncustodial father did not affect fundamental fairness of proceedings because minor's counsel and mother were present to advise minor on significant decisions); *In re J.W.*, 87 Ill. 2d 56, 61, 429 N.E.2d 501, 504 (1981) (concluding lack of notice to noncustodial father was not an error because the minor had "the assistance of his custodian, the person on whom he relies for other important decisions in his life"). This court has stated that "the primary purpose of affording the parents an opportunity to be present at significant juvenile delinquency proceedings is the aid the parent can give to the minor." *In re S.L.S.*, 181 Ill. App. 3d 453, 456-57, 536 N.E.2d 1355, 1358 (1989).

¶ 47        Although this court has consistently held that trial counsel cannot assert his own ineffectiveness (*Rhodes*, 2019 IL App (4th) 160917, ¶ 17), we believe that a parent's raising counsel's alleged ineffectiveness in a juvenile delinquency proceeding in which that parent's child is a respondent is a far different matter. Given a parent's unique role in juvenile delinquency proceedings, we conclude that (1) a parent may raise ineffective assistance of counsel claims to the trial court in the same manner as a *pro se* respondent and (2) when a parent has done so, the trial court is required to conduct a *Krankel* hearing.

¶ 48        Because we conclude the trial court erred when it did not conduct a *Krankel* inquiry, we remand this case so that it may do so. (We encourage the trial court to review this

court's recent decision in *Roddis*, 2018 IL App (4th) 170605, for a detailed discussion of how to proceed on remand.)

¶ 49                               C. Remand

¶ 50       "Because we conclude a *Krankel* inquiry is necessary, we need not consider [respondent's] other arguments." *Rhodes*, 2019 IL App (4th) 160917, ¶ 21; see also *People v. Bell*, 2018 IL App (4th) 151016, ¶ 37, 100 N.E.3d 177 ("Depending on the result of the *** *Krankel* inquiry, defendant's other claims may become moot."). We express no view on the merits of respondent's ineffective assistance claim or on any of the other arguments he has made on appeal.

¶ 51       To avoid confusion in the event of a subsequent appeal, we retain jurisdiction over this matter pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994). *Alonzo O.*, 2015 IL App (4th) 150308, ¶ 31. In the event that the trial court appoints new counsel after the *Krankel* inquiry and ultimately determines that a new trial is warranted, the court should proceed accordingly. Only if (1) the trial court determines that appointment of new counsel is not warranted or (2) after a subsequent hearing on the ineffective assistance claim, the trial court rejects that claim, then respondent may again appeal, at which point we will address respondent's remaining arguments from this appeal and any argument on appeal respondent may raise about the trial court's determination that his trial counsel was not ineffective.

¶ 52                               III. CONCLUSION

¶ 53       For the reasons stated, we remand for the trial court to conduct an inquiry into respondent's claim of ineffective assistance of counsel.

¶ 54       Remanded with directions.