Filed 4/16/10          NO. 4-09-0925

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

IN RE: Ch. W. and Ca. W., Minors,      )   Appeal from
THE PEOPLE OF THE STATE OF ILLINOIS,   )   Circuit Court of
          Petitioner-Appellee,         )   Champaign County
                v.                     )   No. 09JA57
JERRY WELLS,                           )
          Respondent-Appellant.        )   Honorable
                                       )   John R. Kennedy,
                                       )   Judge Presiding.
_____

JUSTICE TURNER delivered the opinion of the court:

In August 2009, the State filed a petition for adjudication of wardship as to Ch. W. (born in October 2001) and Ca. W. (born in September 2002), the minor children of respondent, Jerry Wells. The minor children's mother, Dena Wells, is not a party to this appeal. After an adjudicatory hearing, the trial court found the minor children were neglected and dependent. In December 2009, the court made the minor children wards of the court and appointed the Department of Children and Family Services (DCFS) as their guardian.

Respondent appeals, contending (1) he was denied effective assistance of counsel, (2) the State violated his due-process rights, and (3) the trial court erred by finding the minor children were neglected. We remand with directions.

I. BACKGROUND

Respondent and Dena adopted the minor children, who are

Dena's biological grandchildren, in 2004. Dena suffers from chronic obstructive pulmonary disease. On March 26, 2009, DCFS became involved with the family after allegations were made that respondent had molested J.C., a neighbor child. The next day, Sheri Foley, a DCFS investigator, conducted separate forensic interviews of J.C. and Ch. W., which were recorded by both video and audio. Under a DCFS safety plan, the minor children remained in the home with Dena, and respondent lived elsewhere.

In April 2009, respondent was arrested and incarcerated. People v. Wells, No. 09-CF-746 (Cir. Ct. Champaign Co.). In June 2009, a grand jury charged respondent with one count of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2006)) (Ch. W. alleged victim) and one count of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i) (West 2008)) (J.C. alleged victim) for his actions in March 2008. In the criminal case, the State moved to admit, inter alia, Ch. W.'s statements to Foley under section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2006)). After holding a hearing on the motion and viewing the recordings of the interviews, Judge Heidi Ladd denied the motion as to Ch. W.'s statements because Foley's questions were too leading to provide sufficient safeguards of reliability. On appeal, respondent has supplemented the record with a verbatim transcript of Judge Ladd's oral ruling on the motion. In October 2009, the State

- 2 -

dismissed all of the criminal charges against respondent, and he was released from jail.

On August 14, 2009, the police took protective custody of the minor children when Dena was admitted to the hospital and had no one to care for the minor children. Three days later, the State filed its petition, alleging the minor children were (1) neglected under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2008)), in that their environment was injurious to their welfare when they resided with Jerry as the environment exposed them to the risk of sexual abuse; and (2) dependent under section 2-4(1)(a) of the Juvenile Court Act (705 ILCS 405/2-4(1)(a) (West 2008)) because they lacked a parent, guardian, or legal custodian to care for them due to respondent's incarceration and Dena's poor physical health.

On September 25, 2009, the trial court commenced the adjudicatory hearing. Dena admitted and stipulated to the dependent count of the petition, and the shelter-care report served as the factual basis for the admission. The court entered judgment in favor of the State and against Dena and then proceeded to hear evidence as to respondent. Only the pertinent testimony presented at the adjudicatory hearing is set forth below.

Foley testified she had received specific training in

- 3 -

forensic interviewing of children and had "conducted 185 sexual[-]abuse reports."  On March 27, 2009, Foley interviewed Ch. W. at the Child Advocacy Center, which had a child-friendly atmosphere.  Foley indicated Ch. W. was developmentally delayed and that, while Ch. W.'s language was clear, it was more on the level of a five-year-old than a seven-year-old.  According to Foley, Ch. W. was comfortable during the interview and did not seem nervous or fearful.  Foley stated that, due to Ch. W.'s limited ability to answer open-ended questions, the questions asked her were more direct as to sexual abuse.

When Foley was asked about what Ch. W. said regarding the charges being investigated, defense counsel made an objection for the record, which the trial court overruled.  Foley testified Ch. W. disclosed sexual touching by respondent, whom Ch. W. referred to both as father and grandfather.  Specifically, Ch. W. stated her father had touched her in the vaginal area.

During the interview, Foley used both anatomically correct drawings and dolls.  Ch. W. was able to identify and describe all the body parts on both the male and female drawings. Ch. W. also knew the differences between the genders and, for the most part, knew what every body part did in her own language. Foley admitted that, at certain points, Ch. W. was unable to identify certain body parts.  Foley explained the dolls were tools used to help her understand what the child had stated

- 4 -

happened.  Foley showed Ch. W. all of the parts on the dolls, which were fully clothed.  Foley asked Ch. W. to show her what happened, and Ch. W. took the male doll's hand and touched it to the girl doll's vaginal area.  Ch. W. indicated it was skin-to-skin touching and Ch. W. was not wearing clothes.  Foley testified Ch. W. stated it happened more than once but it was difficult to know a number with Ch. W.'s age and developmental delays.

On cross-examination, defense counsel asked Foley if she was able to make an estimate of Ch. W.'s mental age and what term Ch. W. used for "vagina."  He also asked a couple of questions about (1) what Ch. W. called respondent and (2) Ch. W.'s biological father.  In total, respondent's counsel asked Foley six questions on cross-examination.

The State also presented the testimony of Jeffrey Smith, the DCFS caseworker for respondent's family; Investigator Dwayne Roelfs, who interviewed respondent twice; and Deputy Andrew Good, an investigator with the Champaign County sheriff's department who observed Investigator Roelfs' two interviews of respondent.  Investigator Roelfs testified respondent recalled an incident in his bathroom, in which Ch. W. touched his partially erect penis.  Respondent told her never to do it again.  Respondent also recalled a time when he was giving Ch. W. a bath and was sightly aroused by bathing Ch. W.

The guardian _ad_ _litem_ presented the testimony of Deputy Kristin Zimmer, who had interviewed J.C.

Respondent testified on his own behalf and presented the testimony of his sister, Kathy Bush, and his brother, Greg Wells. Respondent's counsel did not raise Judge Ladd's ruling. On appeal, respondent supplemented the record with an affidavit, in which he states he told his counsel before the adjudicatory hearing about Judge Ladd's ruling.

In adjudicating the minor children neglected, the trial court noted it found the testimony of Foley to be "particularly convincing." Specifically, the court noted it found her interview was conducted under circumstances that enhanced the minor's credibility, rather than detracted from it. Besides Foley's testimony, the court noted Investigator Roelfs' testimony that, on at least one occasion, Ch. W. had touched respondent's penis.

At the December 2, 2009, dispositional hearing, the trial court found respondent was unfit and unable and Dena was unable to care for the minor children. The court made the minor children wards of the court and appointed DCFS as their guardian. The next day, the court filed a written dispositional order. On December 9, 2009, respondent filed a notice of appeal in compliance with Supreme Court Rule 303 (Official Reports Advance Sheet No. 15 (July 16, 2008), R. 303, eff. May 30, 2008), and thus this court has jurisdiction under Supreme Court Rule 301 (155 Ill. 2d

- 6 -

R. 301). See 210 Ill. 2d R. 660(b) (providing the rules governing civil cases govern appeals from final judgments in all proceedings under the Juvenile Court Act, except for delinquency ones).

## II. ANALYSIS

Respondent first contends he was denied his right to effective assistance of counsel.

Section 1-5(1) of the Juvenile Court Act (705 ILCS 405/1-5(1) (West 2008)) grants minors and their parents the right to be represented by counsel in juvenile proceedings. While the right to counsel in juvenile proceedings is statutory and not constitutional, "Illinois courts apply the standard utilized in criminal cases to gauge the effectiveness of counsel in juvenile proceedings." In re S.G., 347 Ill. App. 3d 476, 479, 807 N.E.2d 1246, 1248 (2004). Thus, courts review ineffective-assistance-of-counsel claims in juvenile proceedings under the standards set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). S.G., 347 Ill. App. 3d at 479, 807 N.E.2d at 1248.

To establish ineffective assistance of counsel under Strickland, one must prove (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. People v. Evans, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163-64

- 7 -

(1999). To satisfy the deficiency prong of Strickland, the party must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). Further, the party must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. Evans, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the party must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceedings' result would have been different. Evans, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.

Respondent asserts his counsel failed to (1) object to Foley's testimony about her interview with Ch. W.; (2) request the trial court to take judicial notice of Judge Ladd's ruling in the criminal case; (3) submit to the court the recordings of Foley's interview with Ch. W., which Judge Ladd reviewed; and (4) aggressively cross-examine Foley about her interview techniques used with Ch. W.

In Massaro v. United States, 538 U.S. 500, 504, 155 L. Ed. 2d 714, 720, 123 S. Ct. 1690, 1694 (2003), the United States Supreme Court recognized the preference of having ineffective-assistance-of-counsel claims brought on collateral review rather than on direct appeal and rejected a rule requiring defendants to bring such claims on direct review or face forfeiture of the

claim. One of the problems with raising an ineffective-assistance claim on direct appeal is the "appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." Massaro, 538 U.S. at 504-05, 155 L. Ed. 2d at 720, 123 S. Ct. at 1694. Another problem is the record likely does not reflect counsel's reasoning behind his or her actions or omissions, and thus the reviewing court may lack a "way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." Massaro, 538 U.S. at 505, 155 L. Ed. 2d at 720, 123 S. Ct. at 1694. However, in a collateral proceeding, "the defendant 'has a full opportunity to prove facts establishing ineffectiveness of counsel, the government has a full opportunity to present evidence to the contrary, the district court hears spoken words we can see only in print and sees expressions we will never see, and a factual record bearing precisely on the issue is created.'" Massaro, 538 U.S. at 506, 155 L. Ed. 2d at 721, 123 S. Ct. at 1694, quoting United States v. Griffin, 699 F.2d 1102, 1109 (11th Cir. 1983).

The problems associated with addressing an ineffective-assistance-of-counsel claim raised for the first time on appeal described by the Supreme Court in Massaro are present in this

case.  While respondent has supplemented the record on appeal with Judge Ladd's ruling, he did not supplement the record with the recordings of Foley's interview of Ch. W.  Moreover, while juvenile proceedings are not meant to be adversarial (People v. Santiago, 384 Ill. App. 3d 784, 790, 895 N.E.2d 989, 994 (2008)), the State may still present evidence to refute respondent's claim, such as the testimony of respondent's counsel, to permit a full review of the ineffective-assistance-of-counsel issue.  The appellate record also lacks any statements from respondent's counsel.  Further, this court will not simply assume the trial court would have ruled the same way as Judge Ladd regarding Foley's interview of Ch. W., especially with the appellate record lacking the recordings.  Additionally, respondent did not raise his claim in the trial court, and thus a hearing focused on the ineffective-assistance-of-counsel issue has not yet taken place.

Since the Juvenile Court Act does not provide for collateral review of its judgments, we retain jurisdiction of this matter and remand the cause for a hearing on respondent's ineffective-assistance-of-counsel claim.  See 155 Ill. 2d R. 366(a)(5) (granting reviewing courts in civil cases the powers to grant any relief including remandment); Jones v. Board of Fire & Police Commissioners, 127 Ill. App. 3d 793, 797, 469 N.E.2d 393, 397 (1984) ("a reviewing court in Illinois is not divested of jurisdiction until the parties' rights of appeal have been

exhausted").  Such a hearing will give respondent a full opportunity to prove facts establishing ineffectiveness of counsel, the State a full opportunity to present evidence to the contrary, and the establishment of a factual record on the issue.  See <u>Massaro</u>, 538 U.S. at 506, 155 L. Ed. 2d at 721, 123 S. Ct. at 1694.  If respondent does not receive a new trial as a result of ineffective assistance of counsel, we will then address respondent's remaining arguments.

## III. CONCLUSION

For the reasons stated, we retain jurisdiction and remand the cause for a hearing on respondent's ineffective-assistance-of-counsel claim.

Remanded with directions.

KNECHT and APPLETON, JJ., concur.