# Illinois Official Reports

## Appellate Court

*In re Alonzo O.*, 2015 IL App (4th) 150308

| | |
|---|---|
| Appellate Court Caption | In re: Alonzo O., a Minor, THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. ALONZO O., Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0308 |
| Rule 23 order filed<br>Rule 23 order<br>withdrawn<br>Opinion filed | September 16, 2015<br><br>October 7, 2015<br>October 7, 2015 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 14-JD-152; the Hon. Brian Goldrick, Judge, presiding. |
| Judgment | Remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Joel C. Wessol, all of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Jason Chambers, State's Attorney, of Bloomington (Patrick Defino, David J. Robinson, and Perry L. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Pope and Justice Steigmann concurred in the judgment and opinion.

## OPINION

¶ 1       In February 2015, following a bench trial, respondent minor, Alonzo O., was found guilty of battery (720 ILCS 5/12-3(a)(1) (West 2014)). In April 2015, the trial court sentenced respondent to 12 months' probation. Respondent appeals, arguing defense counsel provided ineffective assistance of counsel by failing to investigate and impeach the State's central witness with a recent felony conviction, where the court's decision to adjudicate turned squarely on the issue of credibility. We remand with directions.

¶ 2                                    I. BACKGROUND

¶ 3       On August 6, 2014, the State filed a petition for adjudication of wardship against respondent, Alonzo O. (born February 28, 1997), charging him with one count of battery (720 ILCS 5/12-3(a)(2) (West 2014)), alleging he made physical contact of an insulting or provoking nature with Cleofas Aguirre-Alarcon (Aguirre) by striking him in the head with a baseball bat. On December 19, 2014, the State filed a first supplemental petition for adjudication of wardship, charging respondent with one count of battery (720 ILCS 5/12-3(a)(1) (West 2014)), alleging he caused bodily harm to Aguirre by striking him in the head with a baseball bat.

¶ 4       On February 9, 2015, respondent's trial was held. The State called Aguirre to testify with the assistance of a Spanish interpreter. Aguirre testified he was 29 years old. He stated on July 20, 2014, at approximately 3:30 a.m., respondent came to his house asking for his roommate, Carlos. Aguirre told respondent Carlos was sleeping, and respondent left. Aguirre watched respondent proceed to knock on a neighbor's door, and when the neighbor did not answer, respondent walked back to Aguirre's house and took his bicycle. Aguirre yelled out to respondent to put the bicycle back, but respondent ignored him.

¶ 5       Aguirre testified he then went to respondent's house to speak with respondent's father, Alonzo, whom he knew through their employment at Biaggi's restaurant. When Aguirre arrived, he knocked, and Alonzo opened the door with a baseball bat in his hand. Aguirre could see respondent standing behind Alonzo holding a hand weight. Respondent's mother and sister were also at the door. Aguirre testified he believed both respondent and Alonzo were intoxicated based on the odor of alcohol and their bloodshot eyes.

¶ 6       Aguirre testified he was not angry and did not start a fight. He told Alonzo he was there to speak with him about the bicycle respondent had stolen. After the discussion moved outside, respondent's sister took the hand weight from respondent. Respondent then took the baseball bat out of his father's hands and struck Aguirre in the head. Respondent continued to be aggressive and got on top of Aguirre, at which point Aguirre hit respondent in self-defense.

¶ 7    Aguirre left the scene and called his girlfriend, Amanda Bailey, who picked him up and took him to the hospital. Hospital personnel called the police and Aguirre spoke to police officer Jason Haworth regarding the incident. When asked on cross-examination why he chose to go to respondent's house rather than call the police after respondent took his bicycle, Aguirre responded, "the last time I called the police they arrested me unjustly." Defense counsel then asked whether the prior arrest was for a similar situation, to which Aguirre responded, "Something similar." There were no further questions about Aguirre's prior arrest.

¶ 8    Respondent's 15-year-old sister, Monica, testified on respondent's behalf. Monica testified that on July 20, 2014, at around 3 a.m., she heard a "loud banging on the door." Monica opened the door and a man she didn't know said something about respondent and a bicycle. Respondent and her father came to the door from the kitchen to see who was there, at which point the man at the door became aggressive. He accused respondent of stealing his bicycle and hit respondent with his fist. Respondent then grabbed a baseball bat from her father and hit Aguirre with it in the back of the head.

¶ 9    Respondent testified next on his own behalf. Respondent stated, on July 20, 2014, he awoke at 3:30 a.m. when he heard a loud knock at the door. His sister, Monica, was the first one to the door, but he and his father were right behind her. Respondent explained he grabbed a baseball bat for protection because he did not know who was at the door. When he and his father got to the door, they both thought Aguirre was either drunk or on drugs because of the way he was talking and shaking. At that point, everyone went outside. Respondent testified Aguirre started acting aggressively and hit him in the face with his fist. Respondent stated he defended himself and hit Aguirre in the back of the head with the baseball bat. Aguirre then left. Respondent testified his father never had possession of the baseball bat.

¶ 10    Respondent's mother, Georgina, testified next on respondent's behalf with the partial assistance of a Spanish interpreter. Georgina explained she heard a loud knock and got out of bed to see who was at the door. She saw her daughter open the door. Georgina's husband and respondent were also nearby. Georgina explained her husband keeps a baseball bat in the house, and she saw respondent pick it up before they went outside. Once they were outside, Aguirre became aggressive and accused respondent of stealing his bicycle. Aguirre hit respondent in the eye with his fist. Respondent then swung the baseball bat with one hand, hitting Aguirre in the back of the head. On cross-examination, Georgina testified her husband initially was holding the baseball bat, but respondent took it from him to hit Aguirre.

¶ 11    Officer Jason Haworth testified he spoke with Aguirre at the hospital following the incident. He stated Aguirre never told him he hit respondent.

¶ 12    The State called respondent's father, Alonzo, in rebuttal. Alonzo testified Aguirre came to his family's house around 3:30 a.m. on July 20, 2014, and he did not arrive "in a very friendly way." Alonzo testified his daughter initially opened the door, but he and respondent went outside to speak with Aguirre. Alonzo stated he never had anything in his hands, but respondent had picked up a baseball bat. Once they were outside, Aguirre became aggressive and "took a swing" at respondent. At that point, respondent hit Aguirre with the baseball bat.

¶ 13    After hearing all of the evidence, the trial court stated, in part:

"[T]here was a bat. [Aguirre] was struck with it. In the [c]ourt's mind, the question is whether he was hit with the bat first or whether he was hit in response to making contact with the minor allegedly by hitting him in the eye. The [c]ourt has the opportunity to observe the witnesses here, size, weight. I have the opportunity to

- 3 -

observe their demeanor and to determine the credibility of their testimony, and I think based upon what's presented here we have two males, a minor and his father, who the [c]ourt will consider to be not large men, but fair proportions. They appear to be fairly–I would characterize them as strong-looking individuals. And we have the victim here, Mr. Aguirre, who's of substantial size, but appears to be not much bigger than either the minor and [*sic*] the father. And the [c]ourt finds it highly unlikely that Mr. Aguirre would take a swing at the minor when there's [*sic*] two male individuals present and a baseball bat involved, and at one point in time, a weight apparently being handled by the minor. The father here says that he never held the bat. The minor claims to have been the only one who had the bat, as the [c]ourt recalls the testimony, but I find the testimony of the minor and his father, coupled with the testimony of the sister and mother, to be inconsistent and find Mr. Aguirre's version of the incident to be credible and the version as set forth by the minor and his family to not be credible.

    ***

I don't think Mr. Aguirre was the aggressor in this case. Again, I don't condone self-help, early morning hours, but, again, those are the facts of this case. And when I consider again all the testimony, the evidence, make my observations and assess the credibility, I think the State has proven beyond a reasonable doubt the allegations in the original and supplemental petition ***."

The court then adjudicated respondent to be a delinquent minor and found respondent guilty of battery.

¶ 14    In March 2015, the trial court sentenced respondent to 12 months' probation.

¶ 15    This appeal followed.

¶ 16                            II. ANALYSIS

¶ 17    The sole issue on appeal is whether respondent was denied his right to effective assistance of counsel. Respondent argues his counsel was ineffective because he failed to investigate and impeach the State's central witness, Aguirre, with a prior felony conviction for aggravated domestic battery. He requests his adjudication be vacated and a new trial ordered, maintaining the trial court's decision to adjudicate turned squarely on the issue of credibility, and had counsel fulfilled his constitutional duty of "zealous advocacy," the court would have viewed Aguirre's testimony with his criminal history in mind. In the alternative, respondent asks this court to remand for an evidentiary hearing on his ineffective-assistance-of-counsel claim.

¶ 18    In response, the State concedes Aguirre's prior felony conviction could have been used to impeach his credibility under *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971), but maintains "whether counsel's performance was deficient does not need to be determined" because respondent is unable to show he was prejudiced by the error. For the following reasons, we find remand for a limited evidentiary hearing is in order.

¶ 19    Section 1-5(1) of the Juvenile Court Act of 1987 (705 ILCS 405/1-5(1) (West 2014)) grants minors the right to be represented by counsel in juvenile proceedings. "While the right to counsel in juvenile proceedings is statutory and not constitutional, 'Illinois courts apply the standard utilized in criminal cases to gauge the effectiveness of counsel in juvenile proceedings.'" *In re Ch. W.*, 399 Ill. App. 3d 825, 828, 927 N.E.2d 872, 875 (2010) (quoting *In re S.G.*, 347 Ill. App. 3d 476, 479, 807 N.E.2d 1246, 1248 (2004)). Accordingly,

ineffective-assistance-of-counsel claims in juvenile proceedings are reviewed under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Ch. W.*, 399 Ill. App. 3d at 828, 927 N.E.2d at 875.

¶ 20    To prevail on an ineffective-assistance-of-counsel claim under *Strickland*, "a defendant must show both that [his] counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." *People v. Hodges*, 234 Ill. 2d 1, 17, 912 N.E.2d 1204, 1212 (2009) (quoting *Strickland*, 466 U.S. at 687-88). To satisfy the deficiency prong of *Strickland*, a defendant "must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as 'counsel' guaranteed by the sixth amendment (U.S. Const., amend. VI)." *Ch. W.*, 399 Ill. App. 3d at 829, 927 N.E.2d at 875. In addition, defendant must overcome the strong presumption that the challenged action or inaction could have been a result of sound trial strategy. *Id.* To satisfy the prejudice prong of *Strickland*, defendant "must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceedings' result would have been different." *Id.*

¶ 21    In *Massaro v. United States*, 538 U.S. 500, 504 (2003), the United States Supreme Court recognized the difficulties inherent in bringing an ineffective-assistance-of-counsel claim on direct appeal. Our own supreme court recognized the dilemma discussed in *Massaro* in *People v. Bew*, 228 Ill. 2d 122, 134, 886 N.E.2d 1002, 1009 (2008), where it noted that when such a claim is brought on direct appeal, the appellate court "must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." (Internal quotation marks omitted.)

¶ 22    As this court has explained, another problem with addressing ineffective-assistance-of-counsel claims on direct appeal is "the record likely does not reflect counsel's reasoning behind his or her actions or omissions, and thus the reviewing court may lack a 'way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse.' " *Ch. W.*, 399 Ill. App. 3d at 829, 927 N.E.2d at 876 (quoting *Massaro*, 538 U.S. at 505). For these reasons, we have long held "[a]n adjudication of a claim of ineffective assistance of counsel is better made in proceedings on a petition for post-conviction relief." *People v. Kunze*, 193 Ill. App. 3d 708, 726, 550 N.E.2d 284, 296 (1990).

¶ 23    On appeal, respondent supplemented the record with a certified copy of Aguirre's aggravated-domestic-battery conviction in McLean County case No. 12-CF-795 (entered January 22, 2014) and argues defense counsel was ineffective when he failed to conduct a reasonable investigation into Aguirre's criminal past. He maintains such impeachment evidence was crucial because the trial court explicitly found that Aguirre was a credible witness who was unlikely to have been the initial aggressor. Respondent asserts, had Aguirre's prior felony conviction been introduced, the trial court may have determined that Aguirre, not respondent, was the initial aggressor since the testimony that Aguirre acted aggressively toward respondent and his family would have been consistent with his history of violence. Respondent further argues "Aguirre's propensity for violence was central to his character, the reliability of his testimony, and the court's ultimate determination."

¶ 24    In response, the State admits that the record does not reveal whether defense counsel engaged in any type of investigation nor why he would have chosen not to do so. However, it argues we need not determine whether defense counsel's failure to investigate and impeach

Aguirre with his prior conviction was objectively unreasonable because respondent fails to show there was a reasonable probability the result of the trial would have been different. Specifically, the State asserts the court having knowledge of Aguirre's prior felony conviction would not have influenced its decision or affected its finding that respondent's version of events, when coupled with the testimony of his father, mother, and sister, was inconsistent and incredible.

¶ 25    Under *Montgomery*, a witness's prior conviction is admissible to impeach the witness' credibility when "(1) the prior crime 'was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or *** involved dishonesty or false statement regardless of the punishment' (internal quotation marks omitted); (2) less than 10 years have elapsed since the prior conviction or the date the witness was released from confinement, whichever is later; and (3) the judge determines the probative value of the evidence of the prior crime outweighs the danger of unfair prejudice." *People v. Raney*, 2014 IL App (4th) 130551, ¶ 24, 8 N.E.3d 633 (quoting *Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698).

¶ 26    Generally, "the introduction of evidence of other crimes to show or suggest a propensity to commit crime is an improper purpose and is prohibited." *People v. Williams*, 161 Ill. 2d 1, 39, 641 N.E.2d 296, 312 (1994). In certain circumstances, however, an alleged victim's prior convictions may properly be introduced, not only to impeach his credibility, but also to prove his propensity for violence; *i.e.*, he was the initial aggressor. See *People v. Lynch*, 104 Ill. 2d 194, 200-02, 470 N.E.2d 1018, 1020-21 (1984). In *Lynch*, our supreme court held, "when the theory of self-defense is raised, the victim's aggressive and violent character is relevant to show who was the aggressor, and the defendant may show it by appropriate evidence," including through the introduction of prior convictions. *Id.* at 200, 470 N.E.2d at 1021. The court explained:

> "Convictions for crimes of violence, such as *** battery, are reasonably reliable evidence of a violent character. Such evidence is ordinarily inadmissible against a defendant for the purpose of proving the offense charged, because the danger of prejudice outweighs the relevance of the evidence where the defendant stands to lose his liberty or even his life if convicted. Where the victim's propensity for violence is in question, however, the danger of prejudice to the defendant lies in refusing to admit such evidence, while its high degree of relevance and reliability remains constant." *Id.* at 201-02, 470 N.E.2d at 1020-21.

¶ 27    Here, we recognize the trial court found inconsistencies in respondent's witnesses' testimony. However, we also recognize the court explicitly stated its decision to adjudicate respondent a delinquent minor and find him guilty of battery rested on its determination of who it believed initiated the altercation–respondent or Aguirre. In ultimately ruling against respondent, the court stated, "I don't think Mr. Aguirre was the aggressor in this case," finding Aguirre's version of the incident to be more credible than respondent's.

¶ 28    Aguirre was the State's primary witness at trial. The trial court's decision was based largely on its finding that Aguirre's testimony was credible. It is plausible that evidence of Aguirre's prior conviction might have influenced the court's credibility determination. According to *Strickland*, we cannot conclude, based on this record, the result at trial would not have been different had proof of Aguirre's prior aggravated-domestic-battery conviction been introduced. See *People v. Atkinson*, 186 Ill. 2d 450, 461-62, 713 N.E.2d 532, 538 (1999)

("Defendant's testimony at trial made up his entire defense. Defendant's credibility was therefore a central issue, and the prior convictions were crucial in measuring defendant's credibility.").

¶ 29 Nevertheless, as the State aptly points out, the record in this case does not reveal whether defense counsel engaged in any type of investigation into Aguirre's criminal history nor why he would have made the decision not to use Aguirre's prior conviction against him. Thus, as the reviewing court, we lack a way of knowing whether defense counsel's actions had a sound strategic motive or were taken because his alternatives were even worse. See *Massaro*, 538 U.S. at 505. Absent a fully developed record on the issue of counsel's representation and the evidentiary value of Aguirre's prior conviction, we are unable to determine if counsel's performance was deficient or if it resulted in prejudice to respondent. Therefore, we are unable to resolve respondent's ineffective-assistance-of-counsel claim at this time. We conclude, as we have in adult proceedings, the issue before us is best resolved in a collateral proceeding where the record can be fully developed on that precise issue.

¶ 30 In doing so, we are well aware the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2014)) has never been held to apply to juveniles and dismissal of respondent's ineffective-assistance-of-counsel claim would leave respondent with no legal recourse. Here, we determine a limited remand for the trial court to hold an evidentiary hearing on respondent's ineffective-assistance-of-counsel claim is warranted. See *Ch. W.*, 399 Ill. App 3d at 830, 927 N.E.2d at 876 ("Since the Juvenile Court Act [of 1987] does not provide for collateral review of its judgments, we retain jurisdiction of this matter and remand the cause for a hearing on respondent's ineffective-assistance-of-counsel claim.").

¶ 31 Accordingly, pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we retain jurisdiction and remand the cause to the trial court for a hearing on respondent's ineffective-assistance-of-counsel claim. "Such a hearing will give respondent a full opportunity to prove facts establishing ineffectiveness of counsel, the State a full opportunity to present evidence to the contrary, and the establishment of a factual record on the issue." *Ch. W.*, 399 Ill. App. 3d at 830, 927 N.E.2d at 876.

¶ 32 Should the trial court agree with respondent on his ineffective-assistance-of-counsel claim, respondent must be granted a new trial. However, should the trial court reject respondent's claim, respondent may again appeal, at which point we will address the issue with a record properly developed for us to do so.

¶ 33 III. CONCLUSION

¶ 34 For the reasons stated, we retain jurisdiction and remand the cause for an evidentiary hearing on respondent's ineffective-assistance-of-counsel claim.

¶ 35 Remanded with directions.