# Illinois Official Reports

## Appellate Court

---

### *People v. Fellers*, 2016 IL App (4th) 140486

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KARL J. FELLERS, Defendant-Appellant. |
| | |
| District & No. | Fourth District<br>Docket Nos. 4-14-0486, 4-14-0487 cons. |
| | |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | June 27, 2016<br><br>August 4, 2016<br>August 4, 2016 |
| | |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, Nos. 13-DT-2, 13-CM-25; the Hon. Mark A. Fellheimer, Judge, presiding. |
| | |
| Judgment | No. 4-14-0486: Affirmed.<br>No. 4-14-0487: Remanded with directions. |
| | |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Ryan R. Wilson, all of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Seth Uphoff, State's Attorney, of Pontiac (Patrick Delfino, David J. Robinson, and Luke McNeill, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Harris and Pope concurred in the judgment and opinion.


## OPINION

¶ 1          In February 2014, the trial court found defendant, Karl J. Fellers, guilty of four counts of driving under the influence (DUI) and one count of unlawful possession of cannabis. In May 2014, the court sentenced him to 24 months' probation and 180 days in jail for the DUI convictions and 30 days in jail for the cannabis conviction.

¶ 2          On appeal, defendant argues he was deprived of the effective assistance of counsel at trial. We affirm in part and remand with directions.


¶ 3                              I. BACKGROUND
¶ 4                              A. Case No. 13-DT-2
¶ 5          In January 2013, defendant was charged via a citation and complaint in case No. 13-DT-2 with two counts of DUI (counts I and II) (625 ILCS 5/11-501(a)(1), (a)(2) (West 2012)). In September 2013, the State filed a supplemental complaint, charging defendant with two counts of driving with cannabis (count III) and heroin (count IV) in his blood, breath, or urine (625 ILCS 5/11-501(a)(6) (West 2012)).


¶ 6                              B. Case No. 13-CM-25
¶ 7          In January 2013, the State charged defendant in case No. 13-CM-25 with one count of obstructing a peace officer (720 ILCS 5/31-1(a) (West 2012)), alleging he knowingly obstructed the performance of Pontiac police officer Markus Armstrong while performing an authorized act within his official capacity and knowing him to be a peace officer engaged in the execution of his official duties in that he refused to obey commands to stop and ran from the police. The State also charged defendant with one count of unlawful possession of cannabis (720 ILCS 550/4(a) (West 2012)), alleging he knowingly possessed not more than 2.5 grams of a substance containing cannabis.


¶ 8                              C. Bench Trial
¶ 9          In November 2013, the trial court conducted a bench trial in both cases. Jesse Sechrest testified he was driving home from work in his silver Jeep at approximately 12:30 a.m. on December 29, 2012. He observed a Chevrolet Malibu in front of him that "was swerving back and forth." Sechrest called the police.

¶ 10         Lalena Heidenreich testified she lived in a house with two apartments on December 29, 2012. At approximately 12:30 or 1 a.m., she "heard somebody go running up the front stairs." She also heard "some shouting" and saw police officers outside the house.

¶ 11         Pontiac police officer Marcus Armstrong testified he was in his marked squad car in the early morning hours of December 29, 2012. He observed a Chevrolet Malibu followed by a silver Jeep. Armstrong turned around and "attempted to catch up to the vehicle." The vehicle proceeded on Howard Street, turned onto Chicago Street, then turned west on another street before ultimately ending up at 804 North Main Street. Armstrong stated the vehicle "stopped

very abruptly," such that it "was skidding through the gravel when it came to a stop." Armstrong saw a white male with dark hair wearing blue jeans and a black T-shirt over a gray long-sleeved shirt. The person looked back at Armstrong, reached into the vehicle, grabbed a duffel bag or jacket, closed the door, and ran inside the house at 804 North Main Street. Armstrong yelled, "police, stop," out his window, but the person did not stop.

¶ 12    Armstrong exited his vehicle and other officers arrived. Armstrong made contact with Heidenreich, who lived in the downstairs apartment. Armstrong then observed "fresh footprints in the snow" on the steps leading up to the porch. Armstrong ultimately made contact with defendant, who was wearing blue jeans, a black T-shirt over a gray long-sleeved shirt, and white Nike shoes. Armstrong identified pictures taken of the shoe prints on the front step and the bottoms of defendant's shoes. Armstrong stated defendant "looked pretty disheveled," his hair was "messed up," his eyes were bloodshot and glossy, and his breath had an odor of alcohol. Armstrong also detected the odor of burnt cannabis coming from defendant's clothing.

¶ 13    Armstrong asked defendant about the Malibu, and defendant stated the car was his and it had been parked there "pretty much all evening." Defendant denied driving the vehicle recently. When Armstrong asked about the shoe prints on the stairs, defendant stated he had returned home at approximately 12:45 a.m. Defendant had initially stated he had been home all evening. Defendant stated he had consumed "quite a bit" of alcohol that evening. Armstrong administered field sobriety tests and eventually took defendant to jail.

¶ 14    The trial court took a three-month recess in the middle of Armstrong's testimony. However, the parties stipulated to the admission of a video recording of the pursuit from Armstrong's squad car. The court stated it would view the video during the recess.

¶ 15    The trial resumed in February 2014. Armstrong stated defendant submitted to a breath test and the results showed a blood-alcohol level of 0.089. Defendant gave his consent to take blood and urine samples.

¶ 16    Pontiac police sergeant Jim Roberts testified he arrived at 804 North Main Street and noticed a silver Malibu. He touched the vehicle's hood and found it "hot." He also heard the engine "making a crackling sound." Armstrong advised Roberts that he was arresting defendant for DUI. Roberts stated that per department policy regarding a DUI, the vehicle would be towed and an inventory conducted. During the inventory search, Roberts located a small blue pill bottle that contained suspected cannabis under the driver's seat.

¶ 17    The State submitted a laboratory report, which indicated the material found in the car was 0.3 grams of cannabis. Defendant's blood-alcohol level was 0.062, and tests detected tetrahydrocannabinol, codeine, morphine, and a heroin metabolite in his system.

¶ 18    Defendant testified he went to a bar on the evening of December 28, 2012, and had some drinks. He stated he walked with a female to his brother's apartment at approximately 12 a.m. From the time he arrived at the apartment until the officers arrived, defendant did not get into and drive his Malibu.

¶ 19    Following closing arguments, the trial court noted it had watched the video "multiple times" and found "a mountain of circumstantial evidence here that supports the conclusion that the defendant was in fact the one driving the motor vehicle." The court found defendant guilty on the four DUI counts and the single count of cannabis possession. The court found defendant not guilty on the charge of obstructing a peace officer.

¶ 20    In May 2014, the trial court sentenced defendant to 24 months' probation and 180 days in jail on the DUI convictions and an unrelated battery conviction. On the cannabis conviction, the court sentenced defendant to 30 days in jail with credit for time served as well as various costs and assessments. This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22    Defendant argues trial counsel was ineffective for failing to (1) cross-examine Armstrong about inconsistencies between his trial testimony and the dash-camera video and (2) file a meritorious motion to suppress the cannabis found during the inventory search of his car.

¶ 23    A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11, 989 N.E.2d 192. To prevail on such a claim, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 687). "A defendant establishes prejudice by showing that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." *People v. Houston*, 229 Ill. 2d 1, 4, 890 N.E.2d 424, 426 (2008). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601.

¶ 24    This court recently articulated three different categories of cases in which a defendant sets forth a claim of ineffective assistance of counsel on direct appeal. See *People v. Veach*, 2016 IL App (4th) 130888, ¶¶ 71-90, 50 N.E.3d 87. Category A cases involve direct appeals raising ineffective assistance of counsel that the appellate court should decline to address. *Veach*, 2016 IL App (4th) 130888, ¶¶ 74-75, 50 N.E.3d 87. Category B cases involve direct appeals raising ineffective assistance of counsel that the appellate court may address because they are clearly groundless. *Veach*, 2016 IL App (4th) 130888, ¶ 82, 50 N.E.3d 87. Category C cases involve direct appeals raising ineffective assistance of counsel that an appellate court may address because trial counsel's errors were so egregious. *Veach*, 2016 IL App (4th) 130888, ¶ 85, 50 N.E.3d 87.

¶ 25                                A. Cross-Examination

¶ 26    Defendant argues trial counsel failed to confront Armstrong with the dash-camera video that rebutted much of his testimony. The State argues this issue involves a Category B case and the record is sufficient to demonstrate defense counsel's cross-examination of Armstrong did not amount to ineffective assistance. We agree with the State.

¶ 27    We note courts have stated trial counsel's decisions regarding the extent of cross-examination are matters of trial strategy, and such decisions are not subject to review. See *People v Jacobs*, 308 Ill. App. 3d 988, 993, 721 N.E.2d 1160, 1164 (1999) (stating cross-examination is "an area that falls within the ambit of trial strategy and cannot sustain an ineffectiveness claim"). However, even assuming counsel's cross-examination of Armstrong was deficient, we find defendant cannot establish the prejudice prong of the *Strickland* standard.

¶ 28    At trial, Armstrong testified he observed the Malibu with a "silver Jeep directly behind it." Armstrong slowed down and typed the Malibu's license plate into his computer. He then turned around and "attempted to catch up to the vehicle." Armstrong stated the Malibu arrived at 804 North Main Street and "was skidding through the gravel when it came to a stop." He then saw a white male with dark hair wearing blue jeans and a gray long-sleeved shirt under a black T-shirt. The person looked back at Armstrong, reached into the vehicle, grabbed a duffel bag or jacket, closed the door, and ran inside the house. Defense counsel did not mention the dash-camera video during Armstrong's cross-examination.

¶ 29    Defendant argues the video contradicts Armstrong's testimony that the Jeep was "directly behind" the Malibu. Although the Jeep was not directly behind the Malibu, this was a minor inconsistency and immaterial to the ultimate issue of the case. Defendant also argues the video did not record the Malibu skid to a stop or the driver (1) get out of the car, (2) look in Armstrong's direction, (3) close the car door, or (4) run into the duplex. As the trial court noted in its findings, the dash camera in Armstrong's police car was fixed and could not record what Armstrong saw by turning his head. While the video did not show the Malibu skidding to a stop through gravel, the driver exiting while looking in Armstrong's direction, or the driver closing the door, Armstrong could have seen the driver do so as he was turning his car to the left. The video does show the Malibu's rear lights going off and a shadowy figure running toward the front of the house. Thus, the video showed a car that had been occupied moments before and a person running from it, which supported Armstrong's testimony.

¶ 30    Defendant argues the trial court failed to appreciate the inconsistencies between the video and Armstrong's testimony because defense counsel never brought those inconsistencies to its attention. On the contrary, the court noted it watched the video "multiple times." The court pointed out the discrepancy regarding the distance between the Jeep and the Malibu. The court also recalled Armstrong's testimony, found him credible, and reiterated the camera "doesn't have the ability to pivot like your head would." It is clear the court was well aware of Armstrong's testimony and the contents of the video.

¶ 31    The evidence indicated defendant owned the Malibu and no one else had permission to drive it. Armstrong observed the driver wearing blue jeans, a black T-shirt, and a gray undershirt, and defendant was wearing those same clothes. Heidenreich testified she "heard somebody go running up the front stairs" of the house. Sergeant Roberts touched the Malibu's hood and found it "hot." He also heard the engine "making a crackling sound" like it had been "overworked." Pictures of footprints on the steps resembled the pattern on the bottom of defendant's shoes. As the trial court found "a mountain of circumstantial evidence" to support the conclusion that defendant was driving the Malibu, the outcome of the proceedings would not have been different had counsel cross-examined Armstrong on the contents of the video. Thus, defendant's ineffective-assistance claim on this issue is without merit.

¶ 32                                    B. Motion To Suppress

¶ 33    Defendant argues trial counsel failed to file a meritorious motion to suppress the cannabis found during the inventory search of his car conducted by the Pontiac police department. Our supreme court has noted that when "an ineffectiveness claim is based on counsel's failure to file a suppression motion, in order to establish prejudice under *Strickland*, the defendant must demonstrate that the unargued suppression motion is meritorious, and that a reasonable

- 5 -

probability exists that the outcome would have been different had the evidence been suppressed." *Henderson*, 2013 IL 114040, ¶ 15, 989 N.E.2d 192.

> "The threshold issue in considering whether the police have conducted a valid inventory search incident to a tow of defendant's vehicle is whether the impoundment of the vehicle is proper. [Citation.] That a defendant's car would be left unattended is not a sufficient reason for impoundment unless the vehicle is illegally parked. [Citation.] Law enforcement does have the authority, however, pursuant to its community caretaking function, to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience. [Citation.] Where the police impound a vehicle based on a cognizable reason, an inventory search pursuant to the tow is justified. [Citation.] Although the State's evidence must support a finding that the decision to tow was based on a reasonable procedure, there is no requirement that the State present evidence of written procedures." *People v. Mason*, 403 Ill. App. 3d 1048, 1054-55, 935 N.E.2d 130, 136 (2010).

¶ 34       In the case *sub judice*, Sergeant Roberts testified he conducted an inventory search of defendant's vehicle, as the Pontiac police department had a policy that the cars of DUI arrestees were to be inventoried and towed. This was the totality of the evidence as to the impoundment, which was not at issue at trial. It is possible defendant parked his vehicle in such a way or place that would require it to be towed and inventoried by the police. With an undeveloped record before us on this direct appeal, we cannot make a determination on the propriety of the inventory search or whether the State could justify the search on any other basis.

¶ 35       Believing this to be a Category A case, the State argues the record is insufficient to determine whether counsel should have filed a motion to suppress or whether one would have been successful, and, thus, defendant's claim is more appropriate for collateral review. In his reply brief, defendant disagrees with the State's argument, in part, because he has completed his sentence in this case and cannot file a petition for postconviction relief. See 725 ILCS 5/122-1(a) (West 2014) (stating only a person in prison may file a petition under the Post-Conviction Hearing Act). Moreover, defendant points out he cannot bring an ineffective-assistance claim in a petition for relief from judgment. See *People v. Pinkonsly*, 207 Ill. 2d 555, 567, 802 N.E.2d 236, 244 (2003) (stating proceedings on a petition for relief from judgment "are not an appropriate forum for ineffective-assistance claims because such claims do not challenge the factual basis for the judgment").

¶ 36       Given the undeveloped record and the current status of defendant's case, we find it appropriate, pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), to retain jurisdiction and remand the cause to the trial court for a hearing on defendant's claim of ineffective assistance of counsel. *In re Alonzo O.*, 2015 IL App (4th) 150308, ¶ 31, 40 N.E.3d 1228. " 'Such a hearing will give [defendant] a full opportunity to prove facts establishing ineffectiveness of counsel, the State a full opportunity to present evidence to the contrary, and the establishment of a factual record on the issue.' " *Alonzo O.*, 2015 IL App (4th) 150308, ¶ 31, 40 N.E.3d 1228 (quoting *In re Ch. W.*, 399 Ill. App. 3d 825, 830, 927 N.E.2d 872, 876 (2010)).

¶ 37                                    III. CONCLUSION

¶ 38        For the reasons stated, we affirm the trial court's judgment on defendant's DUI convictions in case No. 13-DT-2 (No. 4-14-0486). We retain jurisdiction and remand the cause for an evidentiary hearing on defendant's ineffective-assistance-of-counsel claim in case No. 13-CM-25 (No. 4-14-0487). As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 39        No. 4-14-0486: Affirmed.

¶ 40        No. 4-14-0487: Remanded with directions.